**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

Troy A. Carte, *et al.*,

              Plaintiffs,                Case No. 2:21-cv-5651

      v.                            Judge Michael H. Watson

American Electric Power Service        Magistrate Judge Vascura
Corporation, *et al.*,

              Defendants.

## OPINION AND ORDER

American Electric Power Service Corporation ("AEP") and American Electric Power System Retirement Plan ("Plan," collectively "Defendants") move to dismiss the Complaint. ECF No. 5. For the following reasons, the motion is **GRANTED**.

## I.    BACKGROUND

Troy A. Carte , James M. Jones, William C. Robinson, and Walter W. Raub, II (collectively "Plaintiffs") assert various claims under the Employee Retirement Income Security Act of 1974 ("ERISA"). *See generally* Compl., ECF No. 1. The Court will briefly outline the relevant ERISA provisions before explaining the facts underlying this case.

### A.    ERISA Overview

ERISA outlines two general categories of retirement plans: defined contribution plans and defined benefits plans. *See Lonecke v. Citigroup Pension*

*Plan*, 584 F.3d 457, 461–63 (2d Cir. 2009) (explaining these two "basic types" of plans) (citations omitted). Defined contribution plans "guarantee only that the employer will contribute a certain amount" to the employees account, but provide no guarantee as to the account's value. *Lonecke*, 584 F.3d at 461 (cleaned up). Both employees and employers may contribute to the fund, but "the employer's contribution is fixed" and each participant is "entitled to whatever assets are dedicated to his individual account." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999) (internal quotation marks and citations omitted).

In contrast, defined benefit plans "generally provide benefits based on the years of service and salary levels of employees and guarantee a fixed periodic payment from retirement to death." *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1162 (6th Cir. 2022). These plans consist of a "general pool of assets rather than individual dedicated accounts." *Hughes Aircraft Co.*, 525 U.S. at 439. Participants have no right to a particular asset in the pool but instead to a "defined level of benefits." *Lonecke*, 584 F.3d at 462 (citation omitted).

This "defined level of benefits" is known as an "accrued benefit." *Id*. For defined benefit plans, the accrued benefit is "expressed in the form of an annual benefit commencing at normal retirement age." 29 U.S.C. § 1002(23)(A). In defined contribution plans, the accrued benefit means "the balance of the individual's account." 29 U.S.C. § 1002(23)(B).

The types of plans also differ in who bears the risk of investment performance. *Lonecke*, 584 F.3d at 462. For defined contribution plans, the

employee bears the risk, *id.*, but in defined benefit plans, the employer "typically bears the entire investment risk" and must "cover any underfunding as the result of a shortfall that may occur from the plan's investments." *Hughes Aircraft Co.*, 525 U.S. at 439 (citation omitted).

Nearly forty years ago, companies began using a new type of plan called the "cash balance plan." *Campbell v. BankBoston, N.A.*, 327 F.3d 1, 7 (1st Cir. 2003) ("The first cash balance plan was adopted in 1985."). This plan is sometimes called a hybrid because it contains features of both defined contribution and defined benefit plans. *Lonecke*, 584 F.3d at 462 (citation omitted). For example, cash balance plans "create a benefit structure that simulates that of defined contribution plans, but employers do not deposit funds in actual individual accounts, and employers, not employees, bear the market risks." *Id.* (internal quotation marks and citations omitted). In spite of this hybrid nature, cash balance plans are classified as defined benefits plans. *Drutis v. Rand McNally & Co.*, 499 F.3d 608, 612 (6th Cir. 2007). Because it is a defined benefits plan, the "accrued benefit" for a cash balance plan is "expressed in the form of an annual benefit commencing at normal retirement age." 29 U.S.C. § 1002(23)(A).

Although touted as easier for laypersons to understand, cash balance plans operate by creating a hypothetical account for an employee and then crediting that hypothetical account with certain "credits." *Lonecke*, 584 F.3d at 462–63. The Sixth Circuit has explained this process as follows:

> Cash balance plans . . . define benefits by reference to a hypothetical account periodically credited with assumed contributions as well as interest credits. Contribution credits are hypothetical contributions an employer makes, usually expressed as a percentage of wages or salary, and interest credits are modeled earnings linked to an outside index such as the one-year Treasury bill rate.

*Nolan v. Detroit Edison Co.*, 991 F.3d 697, 701 (6th Cir. 2021).

In the 1990s, "many employers began converting their defined benefit plans from traditional into cash balance plans." *Id*. at 701 (citing Edward A. Zelinsky, *The Cash Balance Controversy*, 19 Va. Tax Rev. 683, 705, 713 (Spring 2000) ("Zelinksy Paper")). Among other challenges, this transition can create a "wear-away" period, which refers to a period when "an employee continues to work at a company but does not receive additional benefits for those additional years of service." *Nolan*, 991 F.3d at 701 (internal quotation and citation omitted). The *Nolan* Court summarized the cause of the "wear- away" period as follows:

> [Wear-away] happens when the cash balance benefit never exceeds the already-earned annuity benefit under the traditional formula. After the cash balance conversion, the employee's actual pension entitlement does not grow until her hypothetical account balance under the cash balance methodology equals ("wears-away") and begins to exceed the value of the benefit she had earned previously under the traditional pension formula. It can take years for the cash balance benefit to catch up to the traditional plan benefit. And it inevitably takes longer for the cash balance benefit of older workers with longer terms of service to catch up to their traditional benefit because they have amassed a larger benefit under the traditional plan than younger employees with shorter terms of service.

*Id*. (cleaned up).

ERISA also requires plan administrators to provide notice about plans to participants. *See* 29 U.S.C. §§ 1022; 1024; 1054(h).

**B.    Facts[1]**

With this legal framework in mind, the Court turns to the facts of this case. The Complaint lacks clarity and substance, but the Court believes the following represents a fair reading of Plaintiffs' allegations.

AEP employed Plaintiffs from before 2001 through at least 2018. Compl. ¶¶ 1–4, ECF No. 1. Prior to 2001, AEP provided a traditional defined benefit plan for employees. *Id.* ¶ 11. Effective January 1, 2001, AEP adopted an amendment to the Plan that converted the Plan into a cash-balance plan. *Id.* ¶ 12.

The Amendment had "Grandfathered Benefits" for those employees who were participating in the Plan as of December 31, 2000, and a few certain other employees ("Grandfathered Participants"). *Id.* ¶ 13. A Grandfathered Participant would continue to accrue benefits under the pre-2001 formula until December 31, 2010. *Id.* After January 1, 2011, participants could not continue to accrue benefits under the pre-2001 formula. *Id.* ¶ 14. Although Plaintiffs do not use the "wear away" language used by the Sixth Circuit and other courts, Plaintiffs appear to allege that, starting January 1, 2011, they entered a "wear-away" period. *Id.* ¶¶ 15–16. Apparently due to this wear-away period, Plaintiffs experienced no or low benefits accrual after January 1, 2011. *Id.* However,

---

[1] The Court accepts Plaintiffs' factual allegations as true for purposes of Defendants' motion.

Plaintiffs also allege that their post-2010 benefits fluctuated with interest rates and that this fluctuation "caused or exacerbated" the cessation or reduction of benefit accrual. *Id*. ¶¶ 17–18.

Finally, Plaintiffs allege that Defendants provided them with a Summary Plan Description ("SPD"). *Id*. But, they allege that the SPD did not adequately inform them "that they were likely to receive no net benefit accruals for a substantial period." *Id*. ¶ 21.

## II.    STANDARD OF REVIEW

In response to this Court's prior order, the parties thoroughly briefed the appropriate standard of review in this case. *See* ECF Nos. 25, 27, & 28. Upon review of the parties' briefs and its own consideration, the Court agrees that it should review the issues in this case de novo, rather than affording deference to prior administrative determinations. *See, e.g.*, *Daft v. Advest, Inc.*, 658 F.3d 583, 594 (6th Cir. 2011) *abrogated on other grounds by Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, (2010) (explaining that a plan administrator's legal determinations should be reviewed de novo). Further, although Plaintiffs submitted their claims to the administrative process, and the Court takes judicial notice of those related documents attached to the Complaint, the Court concludes it does not need to conduct a thorough review of the claims and appeals process. *See Nolan*, 991 F.3d 697 (reviewing similar claims that had been submitted to the administrative process without referencing the

administrator's determinations in the analysis). Accordingly, the Court will proceed under a traditional Rule 12(b)(6) framework.

A claim survives a motion to dismiss under Rule 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). This standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [unlawful conduct]." *Twombly*, 550 U.S. at 556. A pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the [pleading] are true (even if doubtful in fact)." *Id*. at 555 (internal citations omitted). At the motion to dismiss stage, a district court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Wamer v. Univ. of Toledo*, 27 F.4th 461, 466 (6th Cir. 2022) (internal quotation marks and citations omitted). However, the non-moving party must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## III.    ANALYSIS

Plaintiffs assert the following claims on an individual and class-wide basis: (1) age discrimination under ERISA and the Age Discrimination in Employment Act ("ADEA"); (2) backloading, in violation of § 204(b)(1) of ERISA; (3) insufficient notice, in violation of § 204(h) of ERISA; (4) breach of fiduciary duty in violation of § 404(a) of ERISA; and (5) withholding of documents, in violation of § 502(c)(1)(B) of ERISA.  Compl. ¶¶ 49–64, ECF No. 1.  Defendants move to dismiss all claims.  ECF No. 5.

In their response, Plaintiffs expressly abandon their claims for breach of fiduciary duty and withholding of documents.  Resp. 12, ECF No. 24. Accordingly, those claims are **DISMISSED WITHOUT PREJUDICE**.

### A.    Statute of Limitations

Defendants argue that the age discrimination, backloading, and insufficient notice claims should be dismissed as barred by the statute of limitations.  *See* Mot. 14–18, ECF No. 5.

The statute of limitations is an affirmative defense, *see* Federal Rule of Civil Procedure 8(c), and a plaintiff generally has no duty to plead facts negating an affirmative defense in order to state a valid claim.  *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012).  For this reason, a motion under Rule 12(b)(6), which considers only the allegations in the complaint, is "generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Id*. However, dismissal under Rule 12(b)(6) on the basis of a statute of

limitations defense may be appropriate when "allegations in the complaint affirmatively show that the claim is time-barred." *Id*.

This case fits into the general rule that it is inappropriate to dismiss based on a statute of limitations. Suppose the Court adopted Defendants' proposed limitations periods of two years for claim one and six years for claims two and three. *See* Mot. 14–18, ECF No. 5. Suppose further that the Court agreed with Defendants that each of those claims accrued, at the latest, at the time Plaintiffs received the SPD. *Id*. Even with these Defendant-friendly assumptions, the Complaint does not supply the necessary factual allegations to determine whether the limitation periods have expired. The only factual allegation related to the timing of the SPD is as follows:

> In connection with implementing the Amendment, Defendants provided Plaintiffs and the Class with a summary plan description that included materially misleading, unreasonably optimistic illustrative projections of future cash balance accruals.

Compl. ¶ 22, ECF No. 1.

This allegation does not inform the Court of when Defendants provided the SPD, what delivery method they used, or when Plaintiffs received the SPD. Similarly, a review of the SPD itself does not clearly indicate when it was created, or mailed to participants, or any similar information that would indicate a date at which time the Court could consider Plaintiffs to have received the SPD. *See generally* SPD, Motion, Exhibit A, ECF No. 5-1. Of course, the Court *suspects* that, because the Plan was amended in 2001, the SPD dates from around that

time. However, if the Court used that suspicion to dismiss based on the statute of limitations, it would be construing the Complaint in a light most favorable to Defendants, not Plaintiffs, which is impermissible at this stage. *See Warner v. Univ. of Toledo*, 27 F.4th at 466 (internal quotation marks and citations omitted). So, the Court will not dismiss Plaintiffs' claims as untimely. In any event, as explained below, the Court finds that dismissal of Plaintiffs' claims is appropriate for other reasons.

**B. Merits of the Claims**

**1. Age Discrimination**

Plaintiffs allege that the Plan discriminated against them on the basis of age, in violation of section 204(b)(1)(H)(i) of ERISA and section 4(i)(1)(A) of the ADEA. These statutes mirror each other and "should be interpreted to have an identical meaning." *Hurlic v. S. California Gas Co.*, 539 F.3d 1024, 1036 (9th Cir. 2008) (citations omitted); *see also* 29 U.S.C. §§ 1054(b)(1)(H); 623(i)(1). So, although the Court will refer primarily to ERISA's statutory provisions and cases interpreting the same, the following analysis applies with equal weight to Plaintiffs' claim under the ADEA. *See Hurlic*, 539 F.3d at 1036 ("Because we have held that the Plan does not violate ERISA § 204(b)(1)(H)(i), it follows that the Plan does not violate ADEA § 4(i)(1)(A).").[2]

---

[2] Defendants also argue the ADEA claim should be dismissed for failure to exhaust administrative remedies. Failure to exhaust administrative remedies is a procedural requirement and affirmative defense, and, therefore, the "defendant bears the burden of pleading and proving this failure." *See, e.g., Lockhart v. Holiday Inn Exp. Southwind*, 531 F. App'x 544, 547 (6th Cir. 2013) (internal quotation marks and citations omitted).

From reading the parties' briefs, it seems the primary issue is whether, for purposes of ERISA's anti-age-discrimination provision, "benefit accrual" and "*net benefit accrual*" mean the same thing. According to Plaintiffs, this is an issue of first impression. To clarify, ERISA's anti-age discrimination provision reads as follows:

> [A] defined benefit plan [e.g., a cash benefit plan] shall be treated as not satisfying the requirements of this paragraph if, under the plan, an employee's *benefit accrual* is ceased, or the rate of an employee's *benefit accrual* is reduced, because of the attainment of any age.

29 U.S.C. § 1054(b)(1)(H)(i) (emphasis added). The Sixth Circuit has already explained that, in the context of this statute, "benefit accrual" "refers to the employer's contribution to a plan, and therefore any difference in output as a result of time and compound interest does not violate" ERISA's anti-age-discrimination provision. *Drutis*, 499 F.3d at 614.

Plaintiffs do not meaningfully dispute this statement of the law. Instead, Plaintiffs argue for an expansion of the rule. Specifically, they posit that when, as here, Plaintiffs are subject to a wear-away period and, because of that wear-away period, their "*net* benefit accrual" is reduced or ceased, that should be the basis of an age discrimination claim under ERISA. There are several issues preventing the success of this claim.

---

Based on the circumstances of this case, the Court sees no reason to depart from the general rule that it is inappropriate to dismiss claims based on an affirmative defense at the pleadings stage.

First, Plaintiffs do not define what they mean by "net benefit accrual." That is, except for their insistence that the Court must include the "offset" in the benefits accrual calculus, Plaintiffs do not explain what numbers, percentages, ratios, or other figures a court should use to discern what a particular plaintiff's "net benefits accrual" is. Further, the Court is unconvinced that "net benefit accrual" is actually meaningfully different from how others have viewed age-discrimination claims in the context of wear-away periods. *See, e.g.*, *Nolan*, 991 F.3d at 701 (explaining that the wear-away period can lead to a violation of ERISA's anti-age discrimination provision and outlining one option to avoid the same); *see also* Zelinsky Paper at 743–48 (positing that the wear-away period violates ERISA's anti-age-discrimination provision); *see also Tomlinson v. El Paso Corp.*, 653 F.3d 1281, 1286–89 (10th Cir. 2011) (considering an age discrimination claim on similar facts and finding no violation of the parallel ADEA provision).

In any event, even assuming that the Court adopted the "net benefits accrual" rule, it would be unable to discern whether the Complaint plausibly states an age discrimination claim under that "net benefits accrual," or any other, theory. The Complaint is long on conclusions and legalese but short on specifics. Plaintiffs allege generally that each participant experienced a "cessation or reduction of benefits" (wear-away period), the length of which was "positively correlated to the participants' age." Compl. ¶¶ 50–51, ECF No. 1. They go on to broadly allege that the "net benefit accrual of each Plaintiff . . .

would have been greater if he or she had been younger." *Id*. ¶ 52. The Complaint provides no details on what any named Plaintiffs' "net benefit accrual" was, what it would have been if named Plaintiffs had been younger, or what any younger participants' "net benefits accrual" was. *See generally id*. Similarly, although Plaintiffs generally allege that the benefits "fluctuated" with Treasury Bill interest rates, Plaintiffs provide no specific factual allegations about what the interest rates were, or how their benefits declined or increased as a result. *Id*. at ¶¶ 17–20.

Of course, at the pleadings stage, a plaintiff is not expected to know *all* the potentially relevant facts of her case. Here, however, Plaintiffs failed to include many factual details that *were* in their control. For example, named Plaintiffs are surely aware of their own pension account information and, by extension, what contributions were made, how interest rates impacted their benefits, and any other factors relevant to calculating the "net benefit accrual" for a particular Plaintiff. Further, the Plan includes information about how contributions were calculated for participants of different ages and years of service. *See, e.g.*, Plan Art. IV, ECF No. 5-2. Plaintiffs could, at a minimum, have provided calculations for a hypothetical younger participant to show how a younger participant would have a higher "net benefit accruals" over the relevant time period. With such calculations—even in the absence of discovery about any *actual* younger participants—the Court might have been able to discern whether Plaintiffs have plausibly alleged a claim under their legal theory.

With the current Complaint, Plaintiffs are asking the Court to embrace a "new," vaguely-defined legal rule and apply it to broad, conclusory allegations. The Court declines to do so. Accordingly, the age discrimination claim is **DISMISSED WITHOUT PREJUDICE**.

### 2. Backloading

"Backloading" refers to the disfavored practice of accruing the majority of benefits in the last years before retirement. *See Lonecke*, 584 F.3d at 464; 29 U.S.C. § 1054(b). To prevent backloading, ERISA outlines various alternative accrual tests, only one of which is implicated in this case: the 133 1/3 percent test. *See* 29 U.S.C. § 1054(b). Pursuant to the 133 1/3 percent test, the rate of benefit accrual in any future year may not be more than one-third greater than the rate in the current year. *Lonecke*, 584 F.3d at 464 (citing 29 U.S.C. § 1054(b)(1)(B)).

Plaintiffs argue that the Plan violates the 133 1/3 percent test because they received "no benefit accrual during the initial post-2010 years, and potentially receiv[ed] benefit accruals in later years." Compl. ¶ 55, ECF No. 1. Of course, if a participant received no benefit accrual in one year, *any* subsequent benefit accrual would violate the 133 1/3 percent test. So, Plaintiffs argue, the Plan violates the test.

Defendants respond by pointing to the "plan amendment provision" of ERISA, 29 U.S.C. § 1054(b)(1)(B)(i). Under that provision, "once there is an amendment to the prior plan, only the new plan formula is relevant when

ascertaining if the plan satisfies the 133–1/3 percent rule." *Tomlinson*, 653 F.3d at 1290 (cleaned up). That is, the amendment is treated as if it were "in effect for all other plan years." 29 U.S.C. § 1054(b)(1)(B)(i). So, Defendants argue, the Court should only consider the cash balance plan and, if considering only that plan, there is no violation.

Plaintiffs urge the Court not to apply the "plan amendment provision," citing to Revenue Ruling 2008-7. Revenue Ruling 2008-7 interprets 26 C.F.R. § 1.411(b)-1(a), which provides:

> A defined benefit plan may provide that accrued benefits for participants are determined under more than one plan formula. In such a case, the accrued benefits under all such formulas must be aggregated in order to determine whether or not the accrued benefits under the plan for participants satisfy one of the alternative methods.

Plaintiffs argues that Revenue Ruling 2008-7 is dispositive in their favor, and suggest the ruling deserves *Auer* deference.

Plaintiffs' argument fails. By Revenue Ruling 2008-7's own terms, it does not apply to the Plan. Specifically, the Ruling explains that a "moratorium plan," as defined in Notice 2007-6, is not treated "as failing to satisfy the accrual rules" (e.g., the 133 1/3 percent test). *Tomlinson*, 653 F.3d at 1291 (quoting Revenue Ruling 2008-7).

Notice 2007-6 defines "moratorium plans" as those for which no determination letters were issued due to a moratorium on such letters between 1999 and 2007. Defendants amended the Plan in 2001 and applied for a

determination letter in 2002[3] but did not receive a determination letter until 2008. So, the Plan is a "moratorium plan," and Revenue Ruling 2008-7 does not apply to it.[4]

So, pursuant to the "plan amendment provision," the appropriate consideration is whether, if the Amendment had been in effect for all other plan years, the Plan would have violated the 133 1/3 percent test (or in some other way violate the accrual rules). 29 U.S.C. § 1054(b)(1)(B)(i). There are no factual allegations in the Complaint to support such a claim, and, therefore, this claim is **DISMISSED WITHOUT PREJUDICE**.

### 3. Insufficient Notice

Plaintiffs bring claims for insufficient notice under Sections 204(h) and 102(a) or ERISA. Each of those statutes place notice requirements on plan administrators. *See* 29 U.S.C. §§ 1022; 1054(h). Section 102(a), which applies to all plans, requires administrators to supply an SPD to participants that is "written in a manner calculated to be understood by the average plan participant." 29 U.S.C. § 1022(a). Those SPDs may not have the "the effect [of] misleading, misinforming or failing to inform participants." 29 C.F.R. § 2520.102-2. Further, "[a]ny description of exception, limitations, reductions, and other restrictions of

---

[3] Compl. Ex. E at PAGEID # 56, ECF No. 1-1.

[4] Because Revenue Ruling 2008-7's own terms explain that it does not apply to the Plan, the level of deference the Ruling might be due in another circumstance is irrelevant. *See Tomlinson*, 653 F.3d at 1291–92 ("But plaintiffs may not pick and choose which portions of the Revenue Ruling should be credited; the scope of our deference to an agency's interpretation of its own regulations is, absent Congressional intent to the contrary, coterminous with the scope the agency intends." (citation omitted)).

plan benefits shall not be minimized, rendered obscure or otherwise made to appear unimportant." *Id*. "The advantages and disadvantages of the plan shall be presented without either exaggerating the benefits or minimizing the limitations." *Id*.

As to notice of plan amendments, ERISA § 204(h) provides:

> [A plan] may not be amended so as to provide for a significant reduction in the rate of future benefit accrual, unless, after adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides a written notice, setting forth the plan amendment and its effective date, to . . . each participant in the plan. [5]

As interpreted, this means that "notice is required when an amendment is 'reasonably expected to change the amount of the future annual benefit commencing at normal retirement age.'" *Lonecke*, 584 F.3d at 466 (quoting 63 Fed. Reg. 68,678, 68,680 (Dec. 14, 1998)). What constitutes a "significant reduction" is "based on reasonable expectations taking into account the relevant facts and circumstances at the time the amendment is adopted." *Id*. (internal quotation marks and citations omitted). The notice may contain "a summary of the amendment, rather than the text of the amendment, if the summary is written in a manner calculated to be understood by the average plan participant." *Id*. (internal quotation marks and citations omitted).

---

[5] This is interpreting the version of 29 U.S.C. § 1054(h) that was effective at the relevant times for this case. *See* Pub. L. No. 107–16, § 659(b), 115 Stat. 38, 139–41 (2001); *Lonecke*, 584 F.3d at 466, n. 5.

In support of their insufficient notice claims, Plaintiffs provide the following allegations related to notice in their "factual background" portion of the Complaint:

> 20. The Plan's administrator did not reasonably inform Plaintiffs and the Class of the risk to their future benefit accruals attendant on declining interest rates.

> 21. The Plan's administrator did not reasonably inform Plaintiffs and the Class that they were likely to receive no net benefit accruals for a substantial period, even as other employees received substantial benefit accruals for similar work.

> 22. In connection with implementing the Amendment, Defendants provided Plaintiffs and the Class with a summary plan description that included materially misleading, unreasonably optimistic illustrative projections of future cash balance accruals.

Compl. ¶¶ 20–22, ECF No. 1. Based on these factual allegations, Plaintiffs' insufficient notice claim is comprised of the following four paragraphs:

> 57. The averments of Paragraphs 1 through 56 of this Complaint are incorporated herein by reference.

> 58. Because the offset of accrued Grandfathered Benefits against cash balance benefit accruals resulted in participants with substantial accrued Grandfathered Benefits receiving no benefit accruals during post-2010 years of service, the Amendment provided for a significant reduction in the rate of future benefit accrual.

> 59. The Plan's administrator failed to provide participants advance written notice of the text of the Amendment or a summary of its likely effects, in violation of § 204(h) of ERISA, 29 U.S.C. § 1054(h) and of Treas. Reg. § 1.411(d)–6, 29 CFR § 1.411(d)–6.

> 60. The Plan's administrator also failed to provide participants summary plan descriptions and summaries of material modifications which would reasonably apprise them of their rights under the Plan, in violation of §§ 102(a) and 104(b) of ERISA, 29 U.S.C. §§ 1022(a), 1024(b).

*Id.* ¶¶ 57–60.

There are several issues with Plaintiffs' insufficient notice claims.  First, in both the Complaint and the response brief, Plaintiffs fail to clarify whether their factual allegations, such as they are, support claims for insufficient notice under Section 102(a), 204(h), or both.  For example, although the Complaint references both statutes, the response focuses almost entirely on a section 102(a) analysis, with only passing references to 204(h).  Compl. ¶¶ 22, 58, ECF No. 1; Resp. 9–12, ECF No. 24.  Of course, one SPD could violate both statutes, but it would not automatically do so for the same reasons.  That is, 102(a) and its accompanying regulations, which apply to all plans, provide specific guidance for what notice materials must do.  In contrast, 204(h), which applies to amendments, and its related guidance is full of "reasonable" or "significant" language, which is necessarily a more flexible standard.  So, although an SPD that fails to satisfy 102(a) would likely also fail under 204(h), that is not necessarily the case.  And here, Plaintiff has only provided arguments related to Section 102(a); it is not the Court's duty to take Plaintiffs' arguments for section 102(a) and, on its own, read the case law to see if they apply equally to 204(h).

Plaintiffs' broad factual allegations are the next, and more serious, problem.  In their response brief, Plaintiffs rely on a recent Sixth Circuit case in which the court found that an SPD can fail to meet Section 102(a)'s requirements if it contains misleading or overly optimistic information—and if it fails to disclose important possible negative outcomes. *Nolan*, 991 F.3d at 711–715.  Notably,

the *Nolan* Court relied on specific quotes from its notice material, as well as charts, projections, and dollar amounts. *Id*. Similarly, the *Nolan* Court was able to identify what specific pieces of information the plaintiff alleged the administrator failed to disclose. *Id*. at 711–16.

In contrast, here, Plaintiffs have entirely failed to provide any *specific* factual support for their claim that the SPD was insufficient, or, as the regulations instruct, that the SPD was "misleading, misinforming," or minimizing of disadvantages. 29 C.F.R. § 2520.102-2. The only factual allegations about the deficient notice that Plaintiffs provide is that the notice "did not reasonably inform" about risks associated with interest rates and a possible risk of a period of no or low benefit accrual. *Id*. ¶¶ 20–21. However, unlike the kinds of *actually* specific information the Sixth Circuit relied on in *Nolan* (*e.g.*, quotations and allegedly misleading charts or projections), Plaintiffs here provide only broad, generalized complaints. Indeed, they have provided little more than "labels and conclusions," mixed with a bit of statutory language, and that "will not do." *Twombly*, 550 U.S. at 555.[6] Accordingly, Plaintiffs have failed to state a claim for insufficient notice under any of the statutes.

The Court recognizes that it can be difficult to plead a negative. However, a careful review of *Nolan* shows that citing to specific statements, projections,

---

[6] The Court does not suggest that a Rule 9(b) heightened pleading standard should apply to such claims. Instead, the Court is merely applying the traditional 12(b)(6), *Iqbal/Twombly* standard.

examples, etc. can demonstrate that an ERISA defendant "did not explain in plain English . . . that employees transferring to the cash balance plan would not actually receive any new benefits if the benefit accrued under the new plan did not catch up to their frozen traditional plan benefit." *Nolan*, 991 F.3d at 711–15. That is, these sorts of specific references to the notice materials allowed the *Nolan* Court to determine whether the materials had "the effect to misleading, misinforming or failing to inform participants," or whether the limitations or disadvantages of the plan are minimized. 29 C.F.R. § 2520.102-2; *Nolan*, 991, F.3d at 711–15.[7] Those sorts of specific citations may not be the only way to allege an insufficient notice claim. However, a plaintiff certainly cannot prevail by expecting the Court to examine the SPD on its own to figure out what is, or is not, deficient with it. *See InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989) (noting that, even at summary judgment, the Court is not "obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim"). That is particularly true where, as here, Plaintiffs did not even attach the SPD to the Complaint.[8]

The Court also recognizes that Plaintiffs do provide some further details about the SPD in their response brief. Resp. 8–12, ECF No. 24. For example,

---

[7] Similarly, in the context of a plan-amendment-insufficient-notice claim, these specific citations would enable the Court to determine whether the SPD was "written in a manner calculated to be understood by the average plan participant." *Lonecke*, 584 F.3d at 466.

[8] Granted, *Defendants* provided the Court with a copy of the SPD as an attachment to their motion.

they offer allegations of misleading language in the SPD and allege that the SPD was untimely in addition to being substantively insufficient. *Id.* However, allegations in a response brief are not properly before the Court and, therefore, are not considered. *See, e.g.*, *Drinkard v. Tenn.Dep't of Children's Servs.*, No. 2:08-CV-005, 2008 WL 2609166, at *5 (E.D. Tenn. June 26, 2008) ("[T]he allegations in plaintiffs' response briefs have not been properly placed before the court and have not been considered."); *Knowles v. Chase Home Fin.*, LLC, No. 111CV01051JDBEGB, 2012 WL 13018539, at *9 (W.D. Tenn. Aug. 2, 2012) ("A party may not amend its complaint by submitting additional allegations in response to a Rule 12(b)(6) motion to dismiss." (collecting cases)); *see also Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989) (observing, that although the plaintiff might have had a valid ERISA claim, it "is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss"); *but see Brown v. LaSalle Nw. Nat. Bank*, 148 F.R.D. 584, 586 n.3 (N.D. Ill. 1993) (recognizing disagreement with *Thomason*).

Finally, the Complaint also references Section 104(b) of ERISA. Compl. ¶ 60, ECF No. 1. Plaintiffs do not discuss this claim at all in the response. Among other things, Section 104(b) provides various timing requirements for SPDs, and requires that the administrator make certain documents available upon request. *See* 29 U.S.C. § 1024(b). Plaintiffs have already withdrawn their claim for withholding of documents. As to any possible claims related to timing, as explained in the discussion of statute of limitations, the Complaint lacks

specific allegations about the timing of the SPD. So, they fail to plausibly state a claim of relief under Section 104(b).

Accordingly, Plaintiffs' insufficient notice claims are **DISMISSED WITHOUT PREJUDICE**.

## IV. CONCLUSION

For these reasons, Defendants' motion is **GRANTED**. Plaintiffs' claims are **DISMISSED WITHOUT PREJUDICE**. The Clerk is **DIRECTED** to close the case.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT**